Case No. 174118, James Smith v. Brian Cook. Arguments not to exceed 15 minutes per side. Mr. Rhodes for the appellant. You may proceed. Morning. May it please the Court, Harker Rhodes on behalf of Petitioner-Appellant James Smith. Mr. Smith is serving 84 years in prison, an effective life sentence on convictions that violated the Constitution for at least three reasons. First, Mr. Smith received ineffective assistance of counsel from his attorney, Javier Armengau, who was himself being prosecuted for rape and sexual assault at the same time in the same court that he was representing Mr. Smith, and who failed to give Smith any advice regarding the state's final 27-year plea offer, an offer to a sentence more than 50 years shorter than the one that Smith eventually received at trial. Second, even setting aside the flaws in his representation, the circumstantial evidence presented at trial was constitutionally insufficient to convict Smith beyond a reasonable doubt of each of the 12 robberies for which he was eventually convicted, whose primary similarity was just that they were all committed by a black man with a gun robbing a restaurant around closing time. And third, the admission of numerous stipulations purporting to describe how absent witnesses would have testified violated Smith's rights under the Confrontation Clause, which he never knowingly and voluntarily waived. For each of these reasons, Smith's convictions must be set aside. To begin with the violation of Smith's right to effective assistance of counsel, that violation occurred in two separate ways, both with respect to the trial process and with respect to the statute of limitations. The second prong of the Strickland analysis is governed by AEDPA here, because the State court decided the ineffective assistance of counsel to take a step back. This is a 2254 case in which the State court did enter a determination on the merits. However, in our view, neither the first nor the second prong of the Strickland claim should be governed by AEDPA for purposes of this Court's analysis. As to the first prong, the State court did not decide the deficient performance issue, and so the AEDPA standard does not apply. As to the second prong, in our view, the State's determination was contrary to law because it applied the wrong standard for prejudice. And so given that the State's determination was contrary to law, this Court's review should be denoted. And your argument that they applied the wrong standard is because in one place they said that the Strickland standard was that they would have found, rather than there was a reasonable probability that they would have found? That's correct. But isn't it true that in sentences coming both before and after that, they stated the standard correctly? Your Honor, I believe in the block quote in which the Court described the Strickland standard, they did give the standard correctly. And then immediately after that, what the Ohio Court of Appeals said is that an appellate court must find that the outcome would have been different with competent counsel, and I believe that is the last place in which they applied the standard. So there were only two points in which the standard was mentioned. It was correct in the initial block quote, and then it was incorrect in the Court's actual analysis. And don't we have case law, I think, that suggests that stating it, as long as you state it correctly, enough for us to discern that the State court applied the right standard, that that's sufficient, that using a shorthand once doesn't constitute applying the wrong standard? Your Honor, I don't believe either the Supreme Court's case law or this Court's case law goes that far. I think in, for instance, the Johnson v. Genovese decision that this Court recently issued, the question was whether the State court's opinion could be read as applying a preponderance of the evidence standard to the factual allegations, not to the broader question of what's necessary to show prejudice. And I think the most important thing in the case law here is, of course, Williams v. Taylor, in which the Supreme Court specifically identified this error as the type of error that would make a State court opinion contrary to law under AEDPA. And it was exactly that setting where they had stated it correctly the first time? Well, to be clear. Didn't apply a presumption of regularity, which is what I thought we normally did, in the benefit of the doubt? Your Honor, yes. It's certainly true that this Court does normally apply a presumption of regularity. And Williams v. Taylor didn't address these facts in the underlying facts of that case. But the Court presented the hypothetical of a State court that says we are applying a wood. Did you lose if AEDPA applies on this particular point? No, Your Honor. I don't believe we do. I think even if the AEDPA standard applies here and even if this Court is required to defer to the Ohio State court of appeals decision, this Court could still find that the finding of no prejudice was an unreasonable determination of the facts and could therefore grant relief on that basis. And why is that? What is it that Mr. Smith would have done differently if Mr. Armengau had not been his counsel? So what – I mean, I understand you claim that there's an inherent conflict of interest, but they were prosecuted by different prosecuting authorities. So I'm not sure what the prejudice is. What is it that you think would have been done differently with different counsel? I think, Your Honor, what could have been done differently with different counsel is first a more extended pretrial schedule that would have allowed Armengau to investigate the facts of each of the robberies and present a coherent defense as to those robberies. In this case, the pretrial schedule was only six months in a case that involved 19 different robberies, each with its own set of facts. And second, and perhaps more importantly, I think competent counsel would have advised Smith with respect to his confrontation clause rights and would not have agreed to stipulations that allowed the admission of testimony. So let's talk about that. I mean, your confrontation claim seems to rest on our precedent in Carter, which says that personal rights – so in order to get there, we would probably have to say de novo review. So first of all, did the – did the Ohio Court of Appeals decide this question on the merits? No, Your Honor. I think what the Ohio Court of Appeals did was to misunderstand Smith's claim on the merits here. So what the Ohio Court of Appeals said was that Smith was challenging stipulations in general as contrary to the confrontation clause. So then if that's right, if we say, well, they misunderstood the claim that he was raising, they answered a different question than the one he presented, then we would review de novo. And I suppose if we reviewed de novo, we would run into Carter, which is our precedent that says that confrontation rights are personal to the defendant. But every other circuit has held to the contrary. We are the only court that has held that confrontation rights are personal to the defendant. Isn't that right? Your Honor, I'm not sure if every court has addressed the question, but in any event, of course – Every court that has addressed the question has held to the contrary. I'm not aware at the moment of any court that has taken the same view, although I believe the Fourth Circuit may have cited other opinions supporting it. But in any event, Your Honor, I believe that the Supreme Court's precedent is on point on this issue and does treat the confrontation clause as a right that should be belonging to the defendant and that has to be waived under the new law. That's interesting. Where does that come from? What Supreme Court case do you think supports that? I would look particularly to Brookhart v. Janus, Your Honor, in which the Supreme Court had an attorney who had agreed to a procedure which the Supreme Court described as a prima facie case in which the defendant would not have a right to have the witnesses against him cross-examined. The attorney very plainly agreed to that in open court, but the defendant himself did not agree to that, and the Court said that the waiver was not sufficient, that this was not a knowing involuntary waiver of the confrontation clause right under the ZERP standard. And of course, the Supreme Court has since then said that the ZERP standard applies to the waiver of confrontation clause rights. And that's the same point I think that this Court was making in Carter as well. Can't you acquiesce, though, after the exchange? Let's just say hypothetically the lawyer does it without engaging the client. Let's just say that's what happens. Then the trial unfolds and it's pretty darn apparent what's going on and how the stipulations are working, which seems to me very much what was happening in this case. And so why wouldn't that be acquiescence? Your Honor, I think the problem with that analysis is even if there were to be some kind of waiver by acquiescence, that waiver would still have to be knowing involuntary in order to meet the Johnson standard. So if Smith had been advised of his confrontation clause rights by Armengau, if he'd been properly instructed, you have a right to see the witnesses against you and you have a right to have me cross-examine those witnesses on your behalf, and then, you know, Smith maybe didn't personally stand up and say I'm willing to waive those rights, but he nevertheless sat and watched his attorney not cross-examine those witnesses, in that situation you could have that kind of knowing involuntary waiver by acquiescence. But that's not here. In this case, Armengau never actually advised Smith with respect to his confrontation clause rights and never had that key conversation that would make the waiver knowing involuntary. So is it your position that in every trial, criminal trial conducted in America, when the prosecution puts on a witness and defense counsel and the trial court asks defense counsel, would you like to cross-examine, and the defense counsel says, no, Your Honor, no questions. The judge must now stop and have a personal conversation with the defendant and ask whether he understands his confrontation rights and would like to assert them over his lawyer's judgment? Just like a Feretta claim. Just like a Feretta claim. That is your theory, isn't it? It's like a Feretta claim. It's true that our theory is that this is like a Feretta claim, but our theory doesn't extend as far as the hypothetical that Judge Larson posed for the reason that what happened here was a stipulation to a presentation of the testimony of a completely absent witness. So we're not talking about a situation in which the defense counsel makes a decision not to cross-examine a witness who's actually present in the room. We're talking about the admission of a stipulation. But what's the principle difference between the two? I mean, either way, the right to confront the witnesses is the defendant is being against him, a right that belongs to the defendant and can't be waived by counsel. Well, I think this situation is worse than the hypothetical you've described because in this situation with the stipulations, both parts of the right to confrontation were being denied. It was both the right to actually see the witness against you testify, the personal face-to-face confrontation, and also the right of cross-examination. So because in this situation both parts were denied, I don't think the Court needs to take the extreme step of saying that every time that a defense attorney chooses not to cross-examine a witness, that would be some kind of denial of counsel. I assume in the courts that don't follow our rule that they get at this problem through ineffective assistance? That would, I suppose. So what I'm curious about is what gaps does that leave? I mean, why is that such a terrible way to think about this, that, you know, the lawyer has some responsibility, this is a pretty big choice, and if the client's making the choice without any input, that's a problem. If the lawyer's just doing it in a foolish way, that's a problem. Why doesn't ineffective assistance get at all of the things you're nervous about? Well, Your Honor, I think the answer to that is simply that these are two separate and distinct rights in the Constitution, the right to effective assistance of counsel and the right to confront the witnesses against you are each separate constitutional protections. I get the point that if you're right about Carter, you win on that, but I'm making the point that we seem to be very out there by ourselves. We're nervous about that. We're not sure it's consistent with later U.S. Supreme Court decisions. So in thinking about where we should be, I have this inclination to say, no, we're in the wrong side of this, let's get this straightened out, and as to these types of concerns, ineffective assistance of counsel is a pretty good way to deal with them. Respectfully, Your Honor, of course, Carter is binding panel precedent, and so I believe it would require an en banc court to overrule what this Court of Appeals says. Your Honor, for any U.S. Supreme Court decisions that seem to be inconsistent with it. Right. So, for example, if you look at the language of Gonzales v. the United States, which is a 2008 decision, the Court talks about, says that trial management is the lawyer's province. Some decisions are reserved for the client, notably whether to plead guilty, waive the right to jury trial, testify on one's behalf, and forego an appeal, but talks about what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. Those are all for the lawyer, not for the client. So why isn't that intervening Supreme Court precedent that tells us Carter's wrong? Well, I think the critical point about Gonzales, Your Honor, is that the majority did not adopt Justice Scalia's view, which does specifically suggest that the confrontation clause may be a right that's waivable. Now, of course, Justice Scalia's view, in our view, is contrary to the previous decision in Brookhart v. Janus, but in any event, the kinds of waivable rights that the Court is talking about in Gonzales, so evidentiary objections and the admission of evidence, none of those speak to the kind of constitutional objection. But what agreements to conclude regarding the admission of evidence? That sounds to me like a stipulation. That's certainly true with respect to many stipulations, and we have no objection to stipulations that the sun rises in the east or stipulations as to any sort of facts. The key issue here are stipulations with respect to the testimony of absent witnesses, which goes directly to the heart of the confrontation clause, which, again, because it's a constitutional right, we think is different in kind from the kinds of simple statutory evidentiary objections or evidentiary objections under the rules that we believe the Court was talking about in Gonzales. Okay. Just one further question, though. The rule can't be all constitutional rights, because if it's all constitutional rights, then the other piece of the confrontation clause, which is the piece of the example of do you have any questions for this witness, that would also have to be encompassed. Your Honor. Right? So it can't be it's just a constitutional right, therefore it belongs personally to the defendant. I think that's a fair point, Your Honor, and I think my response to that would be that what we have here is the kind of fundamental right involving both face-to-face confrontation and cross-examination that falls on the fundamental side of the line that the Court was drawing in Gonzales, and that that's supported by Carter as well. And from a lawyer under indictment. Yes, Your Honor. I certainly think that that should affect this Court's analysis. Just real quickly on that one, you know, you still have a presumption of innocence. What's supposed to happen to the lawyer? I mean, we start with the assumption that this is a flawed indictment. What is supposed to happen? What's your view of that? Your Honor, we're not arguing here for a per se rule that every lawyer who's accused of any crime in any court therefore becomes constitutionally incapable to represent clients. But here I think where you have a case of incredibly serious criminal charges that are brought against a lawyer in the same court in which his client is being prosecuted, and which were brought initially by the same prosecuting authorities even though they were later prosecuted by a separate arm of the State. In that situation, the conflict is so serious and so obvious that it should The same court. What's the problem that it's the same court? That similar judges could see it, see the two cases? What does it mean that it's why does that do something that's the same court? I mean, presumably it's not going to be the same judge hearing both cases, but maybe it is.  I think that's correct, Your Honor. But I think that having it brought in the same court just increases the perception from the attorney's perspective that what he needs to be doing is putting himself forward as an accommodating person that the judges on the court should respect and know well and should, you know, the kind of attorney who's not going to cause trouble. And does this lawyer act that way in this case? Well, Your Honor, I think the agreement No, I don't think he did at all. Really? Your Honor, our position is that an effective attorney would not have allowed, for instance, all these stipulations, which unquestionably shortened the length of the trial and allowed the prosecution to introduce testimony that otherwise would not have been admissible without cross-examination, cross-examination that necessarily would have extended the length of the trial and drawn out the time for the proceedings. And had a lot of victims in front of the jury. Your Honor, it's true that there are aspects of the case that may have allowed the stipulation to make sense, but I think the critical point here is that this was a case that was solely about identity. And in that context, it's critical to have a cross-examination that can draw out the flaws in the witness's testimony, the unreliability of the descriptions of the robber. As we've said in our papers, the evidence here, in our view, was constitutionally insufficient to allow conviction at all. But it was all the more important to be able to draw out those flaws through cross-examination rather than simply stipulating to an immense amount of testimony from absent witnesses. All right. You'll get your full rebuttal. Thank you. Thank you very much, Your Honors. Mannion. Morning. Morning, Your Honors. May it please the Court. My name is Jason Mannion, and I represent the warden, Brian Cook. I think the critical and dispositive point in this case is that each of Smith's claims was adjudicated on the merits in the Ohio State Courts. One was also procedurally defaulted. So AEDPA applies to each and every one of these claims. And that procedural default prevents even that deferential review. Because AEDPA applies, this Court must affirm the district court. So what about – I mean, it is really strange. You don't see this every day, a lawyer under indictment for very serious charges and then representing somebody with very serious stakes. I mean, it is an unusual situation. It's certainly unusual, but it's not one that this Court hasn't confronted before. And so in Smith v. Hoffbrauer, which is a case that's cited in Smith's briefs, this Court did face that issue. And there said that you can't presume prejudice when – even when an attorney is being prosecuted in the same county on felony charges while representing the defendant. And so you can't presume prejudice. No court that I'm aware of has ever said you can presume deficiency when you have something like this. You look to see whether the actual performance that was rendered by the attorney was deficient and then whether that caused prejudice. And the important point here is the State Court looked at the prejudice prong. That's the only prong it had to look at. It determined that there was no prejudice here from the fact that Armengau was being prosecuted in that same court. What about all the stipulations? I mean, it is funny. It's an identity case, and it's true. There's a downside to having one victim after another testify about a traumatic incident. But how else are you going to poke holes in the identity issue if you don't put these people up there and say, well, you said this, but what was the light like, or did you have your glasses on, and so forth, the typical things you would do? Importantly, for every robbery, there was at least one of those witnesses that was presented in court that the defense counsel had the opportunity and then did cross-examine. So you did have cross-examination there. But what's also important is that Armengau negotiated these stipulations. He already put into each of these stipulations the varying descriptors that the witnesses gave. And then from what was already in the stipulations, he was able to say, this was not my guy. You have stipulations that talk about a weight or a height or color of skin, different facts that were different. And that's what he used to poke holes in the identity. So I think there was nothing at all unreasonable in stipulating, nothing in those stipulations. Everything that was in those stipulations was what the police had before they were able to identify a suspect. They were not able to identify a suspect based on what was in the stipulations themselves. The only way they were initially able to identify Brian Smith as the robber here was when they caught him fleeing the scene of the robbery. So the stipulations were a reasonable choice. The state court said that when discussing the Confrontation Clause claim. The state court also said that there was no prejudice from those stipulations. So you agree that the Confrontation Claim was addressed on the merits, or I guess you disagree with counsel. But why is that? I mean, the claim that Smith made, he said that the trial court erred by failing to ensure that his Confrontation Waiver was knowing, intelligent, and voluntary. And what the Ohio Court of Appeals said is the third assignment of error argues that stipulations in general constitute a denial to a criminal defendant of the right to confront a witness. We don't see this as being so because they're efficient, basically. So how is that at all responsive to the claim that Mr. Smith actually made? So how can we call that an adjudication on the merits? So the first point is, I think there's two ways of reading this section of the state court's opinion. And it's helpful first to look at the briefs that the defendant filed in the state court. So his assignment of error is very specific. But he opens up that assignment of error by saying that there's a Confrontation Clause violation here because his defense counsel entered into stipulations. Just to stop you there, I'm very skeptical of having people read my opinions based on what the lawyers argued in their briefs. Isn't that pretty out there as a way to interpret an opinion? Well, I think that's a reasonable, I think it's reasonable to read the state court as responding to that paragraph in the brief. Aren't they supposed to stand on their own, our opinions? Sure. And so the other way you can get there is to read the state court as tracking the language of all the federal courts that have addressed this question. So there they say, this isn't a personal right, and a defense counsel may waive it for the defendant so long as it is a reasonable trial strategy and the defendant doesn't object. And so here you have the analysis at least tracks the part of that test that's about whether it is a reasonable trial strategy. That section there says, yes, this was a reasonable trial strategy, it is in general, and it was for this defendant in particular. If we give it fresh review, no effort review, are you in trouble? I mean, given Carter, how do we deal with that? So if I could, just one quick point before I get to that, which is if you look at the Supreme Court's case law, Harrington v. Richter and then Johnson v. Williams, which follows that, it says state courts need not give any reasons when rejecting a claim. State courts may give reasons when rejecting some claims and need not give reasons for the rest of the claims. You still have that under those cases. Yes, that's right. You have to presume it was adjudicated on the merits. And I think that when you see language addressing part of his claim and not the rest, that the same thing would apply there. But if it is de novo review, then I don't think that Carter is some barrier here. So if there was, if it was, so in Carter you had, there was a critical deposition that was conducted out of the presence of either the defendant or his counsel. And there the state had argued that the defendant had waived his Sixth Amendment rights by failing to attend the deposition after the attorney was there. And also I would point out that the holding in Carter seems to be based, at least in part, on the Kentucky Constitution. So if you look in the footnote there, they say, well, in the same day, the Supreme Court of Kentucky said in a different case that this is a personal right to the defendant. And so we don't see any reason to treat this case differently. So I think that case, it wasn't a necessary holding. It was something that was at least partially based on the Kentucky Constitution rather than the U.S. Constitution. But then as you discussed with my opponent, there is a subsequent Supreme Court precedent, which I think is very inconsistent with any implication in Carter that this is a personal right. And in addition to the cases you were discussing, there's also New York v. Hill, which has a similar language, which says that a decision that an attorney makes about the presentation of evidence or an agreement about a presentation of evidence, it falls on the side where it's something that a trial attorney can make a strategic decision about. Could we talk quickly about the procedural default aspect? So you claim there's a procedural default here on the grounds of invited error. And I can see that. On the other hand, the cases say that it has to be an independent and adequate state ground. I mean, that's the stated standard. We don't have a lot of guidance on what it means to be independent. But it seems to me that if your argument is, well, he entered into these stipulations that led the court into the error, if there is such an error, of allowing him to waive his confrontation rights, you see how that's not necessarily independent from the underlying claim. It's bound up with the underlying claim. So I'm wondering, what work does independent do? I get that it could be an adequate state ground, invited error, but is it independent here of the underlying claim? I think that this waiver doctrine is independent from the substantive claims that are related to it. So you can have invited error in a whole number of contexts. It's not limited to a context like this. Sure. It's just that in this case, your argument is he invited the error by stipulating. And his argument is, yeah, but the stipulation led the court to not tell me what my rights were, and I didn't know what my rights were, so how could I have not entered into the stipulation? I didn't know what my rights were. I mean, his claim is the court had to tell him what his rights were. So I guess I'm struggling with independence. Well, I think if you want to ‑‑ I don't know if this answers your question. If you want a more explicit way that they invited the error, then I think you should look to page ID 527 to 28. So this is in pretrial, and the trial court talks to Armengau. They're discussing their plan to use these stipulations. And he says, well, wait, are you going to then bring a Rule 29, a motion for acquittal, based on the fact that someone who was absent didn't come here and testify live? And Armengau says, oh, no, of course not. I won't file that. And so that's a more explicit invitation for the court to just accept the stipulations without doing more than that. But I think if the court does have doubts about that, about the procedural default, I think that you should look at what the court did in Brooks v. Bagley, which is a decision Judge Sutton wrote, where it says because we doubt the soundness of the state's procedural bar ruling, we must consider the court's alternative merits ruling. And so I would point you back towards the state court's rejection of the claim on the merits as well. So for either of those reasons, I think that that claim fails. Even on De Novo, I think that claim fails. But our argument is that it was either procedurally defaulted or it was adjudicated on the merits. I'm looking at this footnote you're relying on in discussing Carter. I'm trying to figure out what Judge Merritt meant by this. He is referring to Kentucky Supreme Court decision. It looks like maybe the Kentucky Constitution. But it does seem a stretch to say that Carter turned on state law. Don't you think that's a stretch? It's at least one of the reasons that he gives for that holding. Yeah, but I mean this is like the reverse Michigan v. Long. If you're not sure, if the state and federal are merged, we always assume it's federal. That's what Michigan v. Long says. So don't we have to assume it's a federal decision? I mean you were very clever bringing in a state constitution. You knew I'd take the bait. I did. But now I'm spitting it out. So you have to tell me why I shouldn't spit it out. Michigan v. Long obviously talks about a rule when a state court is analyzing this. But here, I don't know if Judge Merritt meant to rest this primarily on Kentucky state law. But that is one of the reasons that he gets here. Okay. I would like to address Judge Larson's question about shorthand as well. So it is true that there is part of a sentence that says that the trial court or the appellate court must affirm, and thus it can see that it would have been different. But the Supreme Court has said in these cases that it's wrong to take shorthand like that out of context and then to use that to say that this is contrary to. And so that happened in Holland v. Jackson. It happened in Woodford v. Viziotti where someone said probably rather than reasonably probable, or probable rather than reasonably probable. And I'd also note that this would have been different is very common shorthand in decisions of this court as well. There's many times where this court will set forth the correct standard, apply the standard, then use the would have been different as a shorthand back to the initial correct recitation. That wouldn't be reversible error on a direct appeal. It's certainly not contrary to Supreme Court precedent. So I think that there you can't get around the 2254D edpa deference. He also cites Williams v. Taylor and says that that says otherwise. Williams v. Taylor says that if a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner has not established by a preponderance of the evidence that the result would have been different. Williams v. Taylor is not talking about specific wording that state courts use but about the standards that they actually apply. So I think Williams v. Taylor is an opposite here. In my final seconds, I just point out on the sufficiency of the evidence. They caught him leaving the last crime. He was wearing the same clothes that he was on video the time before. He was wearing gloves he'd used at the two robberies before that. His phone records put him at each of those other robberies as well. There's certainly more than enough evidence for any rational juror to determine that, and certainly it wasn't unreasonable for the state court to find that. If there are no further questions, we'd ask that you affirm the district court. All right. Thank you, Mr. Rhoads. Thank you. Mr. Rhoads, rebuttal. Your Honor, just a few brief points on rebuttal, focusing on the Confrontation Clause issue primarily. First, with respect to the question of invited error, we think Judge Larson is exactly correct that this is not an independent question from the underlying constitutional violation. And in any event, we think that the doctrine of invited error simply isn't applicable by its terms here. If this had been a situation where the trial court had tried to advise, or where Armengau had tried to advise Smith of his rights under the Confrontation Clause, and Smith had then said, oh, no, no, no, I don't want to hear about my Confrontation Clause rights, I'm confident that this is the right choice, then perhaps he could have invited the error of failing to ensure that his waiver was knowing and voluntary. But the simple fact of his attorney agreeing to the stipulations can't invite the error of failing to inform him about the rights that the stipulations according to the state waived. Second, with respect to the question of whether the Confrontation Clause issue was addressed on the merits by the Ohio Court of Appeals opinion, I think the opinion is clear on its face that it misunderstands the claim. It says that Smith was attempting to raise a claim that all stipulations violate the Confrontation Clause, and that's not at all the claim that Smith is, in fact, raising here. The only question is whether a waiver of Confrontation Clause rights has to be knowing and voluntary. And for the third point, again, both Carter. But actually, as stipulations are practiced currently, that is, without advice, all stipulations as currently practiced would constitute a denial to the criminal defendant of the right to confront the witnesses, right? Well, I disagree with the premise that stipulations are generally practiced without any kind of advice to the defendant. I think what normally happens, especially in a case of a stipulation to the testimony of absent witnesses like the one here, is that the counsel does in fact speak with his client and say, you know, here is what we're giving up by agreeing to the stipulation. We have the opportunity to bring these witnesses in. In fact, you have a right to confront these witnesses. But of course, no, no, that's something that would be ferreted out in an ineffective assistance claim, right? So we don't know what, in the context of a criminal trial, what advice a lawyer gave to his client. That's correct. The only way we could know that is if we required a colloquy between the court and counsel. Your Honor. Or the court and the defendant. As a general matter, it's certainly true that these kinds of colloquies aren't on the record between the lawyer and the client. But I think the fact that there haven't been claims like this coming up just demonstrate that, as a general rule, again, in this small and extreme situation where testimony is being brought in by stipulation from absent witnesses, something that strikes at the core of the Confrontation Clause right, these conversations are, in fact, happening between the attorney and the client. And so there's no ground for this kind of claim to be raised here. It's only in this, again, extreme situation where you have both ineffective counsel and then also these kinds of stipulations that essentially agree to a trial by stipulation rather than the trial by jury that's promised. And finally, for my last point, I would just reinforce the exact language of Carter, which we think addresses this directly and is supported by Brookhart v. Janus, where this Court said, the district court found that Carter nonetheless effected a waiver of his right to confrontation, not inserting to confrontation, that's the right the Court's referring to, through the actions of his attorney who appeared for the deposition and then departed. We find this conclusion inconsistent with Zerbst. And the Court goes on to make the point in greater detail following that. Thank you very much, your Honors. Roberts. Roberts. Thanks to both of you for your excellent briefs and arguments and thank you for answering our questions. We always appreciate that. Mr. Rhodes, I see you're a court-appointed counsel. Mr. Smith is very fortunate to have you. Whatever else we do in this case, I can promise you one thing. We will not say there was ineffective assistance on the habeas claim on appeal. That seems to have been established in the last 30 minutes. So thanks to both of you for excellent arguments. Appreciate it.